16 U.S. 157 (____)
3 Wheat. 157
UNITED STATES
v.
BEVANS.
Supreme Court of United States.

*158 February 14th. Webster, for the defendant.
Wheaton, for the United States.
*179 February 21st, 1818. MARSHALL, Ch. J., delivered the opinion of the court.
The question proposed by the circuit court, which will be first considered, is, whether the offence charged in this indictment was, according to the statement of facts which accompanies the question, "within the jurisdiction or cognisance of the circuit court of the United States for the district of Massachusetts?"
The indictment appears to be founded on the 8th section of the "act for the punishment of certain crimes against the United States." That section gives the courts of the Union cognisance of certain offences committed on the high seas, or in any river, haven, basin or bay, out of the jurisdiction of any particular state. Whatever may be the constitutional power of congress, it is clear, that this power has not been so exercised, in this section of the act, as to confer on its courts jurisdiction over any offence committed in a river, haven, basin or bay; which river, haven, basin or bay is within the jurisdiction of any particular state. What then is the extent of jurisdiction which a state possesses? We answer, without hesitation, the jurisdiction of *a state is co-extensive with its territory; co-extensive with [*387 tsilegislative power. The place described is unquestionably within the original territory of Massachusetts. It is, then, within the jurisdiction of Massachusetts, unless that jurisdiction has been ceded to the United States.
It is contended to have been ceded, by that article in the constitution, which declares, that "the judicial power shall extend to all cases of admiralty and maritime jurisdiction." The argument is, that the power thus granted is exclusive; and that the murder committed by the prisoner is a case of admiralty and maritime jurisdiction. Let this be admitted. It proves the power of congress to legislate in the case; not that congress has exercised that power. It has been argued, and the argument in favor of, as well as that against, the proposition, deserves great consideration, that courts of common law have concurrent jurisdiction with courts of admiralty, *180 over murder committed in bays, which are inclosed parts of the sea; and that for this reason, the offence is within the jurisdiction of Massachusetts. But in construing the act of congress, the court believes it to be unnecessary to pursue the investigation, which has been so well made at the bar, respecting the jurisdiction of these rival courts.
To bring the offence within the jurisdiction of the courts of the Union, it must have been committed in a river, &c., out of the jurisdiction of any state. It is not the offence committed, but the bay in which it is committed, *388] which must be out of the jurisdiction *of the state. If, then, it should be true, that Massachusetts can take no cognisance of the offence; yet, unless the place itself be out of her jurisdiction, congress has not given cognisance of that offence to its courts. If there be a common jurisdiction, the crime cannot be punished in the courts of the Union.
Can the cession of all cases of admiralty and maritime jurisdiction be construed into a cession of the waters on which those cases may arise? This is a question on which the court is incapable of feeling a doubt. The article which describes the judicial power of the United States is not intended for the cession of territory, or of general jurisdiction. It is obviously designed for other purposes. It is in the 8th section of the 2d article, we are to look for cessions of territory and of exclusive jurisdiction. Congress has power to exercise exclusive jurisdiction over this district, and over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dock-yards, and other needful buildings. It is observable, that the power of exclusive legislation (which is jurisdiction) is united with cession of territory, which is to be the free act of the states. It is difficult to compare the two sections together, without feeling a conviction, not to be strengthened by any commentary on them, that, in describing the judicial power, the framers of our constitution had not in view any cession of territory, or, which is essentially the same, of general jurisdiction.
It is not questioned, that whatever may be necessary to the full and *389] unlimited exercise of admiralty *and maritime jurisdiction, is in the government of the Union. Congress may pass all laws which are necessary and proper for giving the most complete effect to this power. Still, the general jurisdiction over the place, subject to this grant of power, adheres to the territory, as a portion of sovereignty not yet given away. The residuary powers of legislation are still in Massachusetts. Suppose, for example, the power of regulating trade had not been given to the general government. Would this extension of the judicial power to all cases of admiralty and maritime jurisdiction, have divested Massachusetts of the power to regulate the trade of her bay? As the powers of the respective governments now stand, if two citizens of Massachusetts step into shallow water, when the tide flows, and fight a duel, are they not within the jurisdiction, and punishable by the laws, of Massachusetts? If these questions must be answered in the affirmative, and we believe they must, then the bay in which this murder was committed is not out of the jurisdiction of a state, and the circuit court of Massachusetts is not authorized, by the section under consideration, to take cognisance of the murder which has been committed.
It may be deemed within the scope of the question certified to this *181 court, to inquire, whether any other part of the act has given cognisance of this murder to the circuit court of Massachusetts? The third section enacts, "that if any person or persons shall, within any fort, arsenal, dock-yard, magazine, or in any other place or district of country, under the sole and exclusive jurisdiction of the *United States, commit the crime of [*390 wilful murder, such person or persons, on being thereof convicted, shall suffer death." Although the bay on which this murder was committed might not be out of the jurisdiction of Massachusetts, the ship of war on the deck of which it was committed, is, it has been said, "a place within the sole and exclusive jurisdiction of the United States," whose courts may, consequently, take cognisance of the offence.
That a government which possesses the broad power of war; which "may provide and maintain a navy;" which "may make rules for the government and regulation of the land and naval forces," has power to punish an offence committed by a marine on board a ship of war, wherever that ship may lie, is a proposition, never to be questioned in this court. On this section, as on the 8th, the inquiry respects, not the extent of the power of congress, but the extent to which that power has been exercised.
The objects with which the word "place" is associated, are all, in their nature, fixed and territorial. A fort, an arsenal, a dock-yard, a magazine, are all of this charter. When the sentence proceeds with the words, "or in any other place or district of country, under the sole and exclusive jurisdiction of the United States," the construction seems irresistible, that, by the words "other place," was intended another place of a similar character with those previously enumerated, and with that which follows. Congress might have omitted, in its enumeration, some similar place, within its exclusive jurisdiction, *which was not comprehended by any of the terms [*391 employed, to which some other name might be given; and therefore, the words "other place," or "district of country," were added; but the context shows the mind of the legislature to have been fixed on territorial objects of a similar character.
This construction is strengthened by the fact, that, at the time of passing this law, the United States did not possess a single ship of war. It may, therefore, be reasonably supposed, that a provision for the punishment of crimes in the navy might be postponed, until some provision for a navy should be made. While taking this view of the subject, it is not entirely unworthy of remark, that afterwards, when a navy was created, and congress did proceed to make rules for its regulation and government, no jurisdiction is given to the courts of the United States, of any crime committed in a ship of war, wherever it may be stationed.[(a)] Upon these reasons, the court is of opinion, that a murder committed on board a ship of war, lying within the harbor of Boston, is not cognisable in the circuit court for the district of Massachusetts; which opinion is to be certified to that court.
*182 The opinion of the court, on this point, is believed to render it unnecessary to decide the question respecting the jurisdiction of the state court in the case.
Certificate accordingly.
NOTES
[(a)] This, it is conceived, refers to the ordinary courts of the United States, proceeding according to the law of the land. The crime of murder, when committed by any officer, seaman or marine, belonging to any public ship or vessel of the United States, without the territorial jurisdiction of the same, may be punished with death, by the sentence of a court-martial. Act of 1803, for the better government of the navy, ch. 187, § 1, art. 21. But the case at bar was not cognisable by a navy court-martial, being committed within the territorial jurisdiction of the United States.